Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/01/2024 09:07 AM CDT

State of Nebraska, appellee, v.
Brian K. Adams, appellant.

___ N.W.3d ___

Filed October 1, 2024.    No. A-23-561.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.
3. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.
4. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.
5. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitute deficient performance by trial counsel.
6. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the

evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

7. **Jury Instructions: Pleadings: Evidence.** Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. Because of this duty, the trial court, on its own motion, must correctly instruct on the law.

8. **Self-Defense: Jury Instructions: Evidence.** In the context of a self-defense instruction, a trial court must instruct the jury on the issue of self-defense where there is any evidence adduced which raises a legally cognizable claim of self-defense.

9. **Self-Defense: Claims.** To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force.

10. **Self-Defense.** The force used in defense must be justified under the circumstances.

11. **Jury Instructions: Evidence.** A trial court is not required to give an instruction where there is insufficient evidence to prove the facts claimed; however, it is not the province of the trial court to decide factual issues even when it considers the evidence produced in support of one party's claim to be weak or doubtful.

12. **Self-Defense: Jury Instructions: Evidence.** It is only when the evidence does not support a legally cognizable claim of self-defense, or the evidence is so lacking in probative value as to constitute a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense.

13. ____: ____: ____. That a slight amount of evidence may ultimately be insufficient for the defendant to prevail on his or her claim of self-defense does not bear on whether a self-defense instruction should have been given by a trial court.

14. **Self-Defense: Jury Instructions: Juries: Evidence.** Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense; however, it is not enough to merely show any evidence of self-defense to support an instruction thereon.

15. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

16. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

17. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

18. ____: ____. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

19. **Effectiveness of Counsel.** Counsel is not ineffective for failing to make an objection that has no merit.

20. **Self-Defense: Evidence: Proof.** Evidence of a victim's violent character is probative of the victim's violent propensities and is relevant to the proof of a self-defense claim.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Riedmann, Chief Judge, and Moore and Bishop, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

Brian K. Adams appeals from his convictions of second degree murder and use of a deadly weapon to commit a felony following a jury trial. Adams assigns that the district court for Lancaster County erred in failing to instruct the jury on self-defense, and he includes numerous claims of ineffective assistance of counsel. Because we find that the district court correctly determined the evidence presented did not warrant a self-defense instruction, it did not err in refusing to give the instruction. We affirm.

## II. BACKGROUND

Adams was charged with the first degree murder of Trevious D. Clark and use of a deadly weapon to commit a felony. A

jury trial was held May 8 through 10, 2023. Three witnesses testified as to the altercation that resulted in Clark's death: Malaki Williams (Clark's cousin), Mylijah Wagy (a tenant who witnessed part of the altercation from his window), and Adams. Additional witnesses included law enforcement personnel and a forensic pathologist. Their testimony, as relevant to Adams' assigned errors, disclosed the following facts.

### 1. Evidence at Trial

On October 18, 2021, Clark had driven Williams to a pharmacy and a fast-food restaurant. They were on their way back to Clark's home and cut through an alley that ran through an apartment parking lot. As they were driving through the parking lot, Clark saw some friends and stopped to talk. Adams, who at the time was unknown to both Clark and Williams, approached the van and expressed an interest in buying it. Clark told Adams the van was not for sale. According to Williams, Adams opened and slammed Clark's door twice. Adams, however, testified that Clark became irate with him after Clark dropped some marijuana he was attempting to roll, Clark tried to exit the van, and Adams pushed the door closed. Clark eventually exited the van, and Adams and Clark got into an altercation.

There is some discrepancy regarding the specifics of the altercation, but the witnesses generally agree that Adams and Clark exchanged punches and ended up on the ground. Two people in the parking lot separated them. After Adams stood up, Clark swung again, striking Adams in the eye and knocking him to the ground.

After Adams got back up, he went to his van that he had backed into a parking space along the fence. He retrieved from the back of his van what Williams and Wagy identified as a "pole" but was actually a tire jack handle. Adams testified he intended to use the handle to chase off Clark. The other two people in the lot took the tire jack handle from Adams, set it on the ground 2 to 5 feet behind Clark's van, and encouraged Adams and Clark to leave.

Clark walked back to his van, and Adams picked up the tire jack handle. Williams testified that Clark yelled out to Adams that he would be back. Adams stated that when Clark got to his van, "he said he was finna come and finish me off." Clark drove the van between 5 to 15 feet toward the street and then stopped. Wagy testified that Adams was following Clark's van as it drove forward; Adams, however, testified that Clark had come to a stop before he approached the van. According to Adams, he moved toward the back of Clark's van to provide himself coverage if Clark got out of the van with a gun.

When Clark stopped the van, he said something to Williams about "just get this over with, drop the beef." Williams could see Adams approaching the van with the tire jack handle. Clark got out of his van and swung at Adams. Wagy, who was watching from his upstairs window, could no longer see what was happening once Clark exited his van.

Adams testified that when Clark stepped out of the van, he saw something in Clark's hand, but he did not know what it was. Adams then struck Clark on the top of his head with the tire jack handle and Clark fell to the ground. Adams stomped on what he believed to be Clark's back to make sure he let go of whatever was in his hand. He testified, however, that he could not see well due to his eye injury, so he was uncertain whether he stomped on Clark's head or his back. Williams testified that Adams stood over Clark's body saying that "he beat his ass, he did it to him," and that Adams then stomped on Clark's head.

Williams got out of the van and saw Clark on the ground. Adams testified he saw Williams take whatever Clark had in his hand and drive away. Williams confirmed that he left the scene in Clark's van but denied taking anything from the scene. According to Williams, Adams ran away and someone drove off in Adams' van. Williams testified that he did not contact law enforcement, but that at some point they contacted him.

Video footage from a neighbor's camera was entered into evidence, but the camera did not record the entire event. The

video shows the location of both Adams' and Clark's vans and captures Adams' initial approach with the tire jack handle prior to it being taken away from him. The next images are of Adams' van pulling out of the parking lot after Clark was struck with the tire jack handle. There is no video of the actual altercations.

Clark was taken to a hospital, where he was pronounced deceased. An autopsy was conducted, and the pathologist determined that Clark died from blunt force injury to the head. The pathologist also noted there were abrasions and contusions along Clark's scalp and facial area. He confirmed that the injuries he saw were consistent with being hit on the head with something like a pole and would also be consistent with having the head stomped on. The pathologist did not note any broken ribs during the autopsy. Adams' left shoe was found to have a spot of Clark's blood on it.

Officers became aware that Adams had made a social media post about the incident, and they were able to view it and record it. In the video, Adams stated that someone tried to "play him" that day and that when Adams left, the man was not breathing. Adams further stated in the video that the man hit Adams in the eye and Adams "beat his ass." Officers located Adams hours after the incident, and he was arrested and taken to the hospital to receive treatment for an injury under his eye. Adams gave a statement to law enforcement but did not mention that he believed Clark had a weapon.

## 2. Jury Instructions

Adams requested a self-defense jury instruction although a proposed instruction is not included in our record. The State argued that Adams could have retreated, and thus was not entitled to a self-defense instruction. It relied upon Adams' testimony that he returned to his van to get the tire jack handle and that at that time, he could have stayed in his van or used his cell phone to call police. It also argued that although Adams testified that initially Clark's van was blocking Adams'

access to leave, Adams admitted that once Clark moved his van toward the street, he had room to leave. The State argued that instead of doing so, "he chose to advance on the van to take cover."

The district court found that a self-defense instruction was not warranted by the evidence because Adams testified that he could have gotten in his van and called the police, or he could have gotten in his van and waited until Clark left, and because Adams eventually conceded that after Clark's van had moved forward after the initial altercation, Adams did have room to leave in his van but chose not to do so.

### 3. VERDICTS AND SENTENCING

The jury found Adams guilty of second degree murder and use of a deadly weapon to commit a felony. Adams was sentenced to a term of 50 to 60 years' imprisonment for his conviction of second degree murder and a term of 10 to 20 years' imprisonment for his conviction of use of a deadly weapon to commit a felony. Adams appeals.

## III. ASSIGNMENTS OF ERROR

Adams assigns, consolidated and restated, that the district court erred in refusing to instruct the jury on self-defense. He also assigns that trial counsel was ineffective in failing to (1) object at the formal jury instruction conference and not offer a proposed jury instruction on self-defense, which would have preserved the issue for appellate review; (2) produce evidence through the pathologist and autopsy photographs that Clark did not have debris or bruising on his head to support Adams' testimony that he did not stomp on Clark's head; (3) introduce evidence through Adams' testimony that his van was blocked, which prevented him from retreating; (4) present evidence that Williams did not stay on scene or contact police to support Adams' testimony that Williams removed something from the scene; (5) produce evidence or argue that Adams could not see what was in Clark's hand to strengthen Adams' self-defense claim; and (6) pursue character evidence

through Clark's nickname to support that Clark was the initial aggressor.

## IV. STANDARD OF REVIEW

[1] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Gonzalez*, 32 Neb. App. 763, 5 N.W.3d 221 (2024).

[2,3] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

[4,5] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitute deficient performance by trial counsel. *Id*.

## V. ANALYSIS

### 1. JURY INSTRUCTION

[6] Adams assigns that the district court erred by refusing to instruct the jury on self-defense. We find that the evidence did not warrant a self-defense instruction and that the district court did not err in refusing to give the instruction.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

[7] There is no proposed self-defense jury instruction in the record, but it appears from the bill of exceptions that the court provided a potential instruction that outlined self-defense. Normally, an appellant's failure to include a proposed jury instruction in the record on appeal precludes appellate determination of whether the tendered instruction was a correct statement of law and was warranted by evidence. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). Nonetheless, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. *State v. Gonzalez, supra*. Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *Id*. As such, despite Adams' failure to include the proposed jury instruction in the appellate record, we review whether the district court erred in refusing to instruct the jury on self-defense.

[8-11] Self-defense is a statutorily affirmative defense in Nebraska. See *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009) (defendant has burden of going forward with evidence of self-defense, after which State has burden to prove defendant did not act in self-defense). In the context of a self-defense instruction, a trial court must instruct the jury on the issue of self-defense where there is any evidence adduced which raises a legally cognizable claim of self-defense. *State v. Bedford*, 31 Neb. App. 339, 980 N.W.2d 451 (2022). To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. *Id*. The force used in defense must be justified under the circumstances. *Id*. A trial court is not required to

give an instruction where there is insufficient evidence to prove the facts claimed; however, it is not the province of the trial court to decide factual issues even when it considers the evidence produced in support of one party's claim to be weak or doubtful. *Id*.

[12-14] It is only when the evidence does not support a legally cognizable claim of self-defense, or the evidence is so lacking in probative value as to constitute a failure of proof, that a trial court may properly refuse to instruct a jury on a defendant's theory of self-defense. *Id*. That a slight amount of evidence may ultimately be insufficient for the defendant to prevail on his or her claim of self-defense does not bear on whether a self-defense instruction should have been given by a trial court. *Id*. Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense; however, it is not enough to merely show any evidence of self-defense to support an instruction thereon. *Id*.

Neb. Rev. Stat. § 28-1409 (Reissue 2016) provides in part that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." However, the statute also provides that the use of deadly force shall not be justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . ." § 28-1409(4)(b).

Here, the evidence showed that after Clark punched Adams in the eye, Adams went to his van and got the tire jack handle. Adams testified that he did not have enough room to pull his van out of the lot at that time because Clark's van was blocking him, but he admitted he could have stayed in his van instead of returning to confront Clark or called the police from his cell phone in the van. But he chose to do neither. In other words, Adams could have safely retreated but did not.

After the tire jack handle was taken from Adams, Clark returned to his van and drove 5 to 15 feet toward the street. According to Adams, when Clark's van started moving, Adams was standing between the front of his van and the back of Clark's van. His testimony was that he was "quite a ways from the back of [Clark's] van." At that point, Adams could have gotten into his van and pulled out of the parking lot because his van was no longer blocked by Clark's van. However, Adams advanced to the back of Clark's van either as it was moving or once it stopped, and that is when he struck Clark with the tire jack handle.

As such, Adams could have safely retreated before using deadly force. Thus, Adams did not establish a legally cognizable claim of self-defense because § 28-1409(4)(b) provides that the use of deadly force is not justifiable if the actor can avoid the necessity of using the force with complete safety by retreating. See, *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986) (defendant did not act in self-defense when he could have safely retreated to car); *State v. Kuntzelman*, 215 Neb. 115, 337 N.W.2d 414 (1983) (refusal to instruct on self-defense not error where defendant could have safely retreated to his van).

Because the evidence did not establish a legally cognizable claim of self-defense, the instruction was not warranted by the evidence. The district court did not err in refusing to instruct the jury on self-defense.

## 2. Ineffective Assistance of Counsel

[15] Adams assigns numerous ways in which he believes his trial counsel was ineffective. We first set forth the general framework for our analysis before addressing each claim individually. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally

barred in a subsequent postconviction proceeding. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

[16-18] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Turner, supra.* To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

### (a) Jury Instruction

[19] Adams assigns that his trial counsel was ineffective by not objecting at the formal jury conference or offering a proposed self-defense jury instruction and therefore not preserving the issue of a self-defense instruction for appeal. We have already addressed whether the district court erred in refusing to instruct on self-defense, and we concluded that it did not. Thus, Adams cannot show deficient performance because an objection to the jury instructions would have had no merit and the failure to propose a self-defense instruction did not prejudice him. Counsel is not ineffective for failing to make an objection that has no merit. *State v. Gonzalez*, 32 Neb. App. 763, 5 N.W.3d 221 (2024). This assigned error fails.

### (b) Autopsy Evidence

Adams assigns that his trial counsel was ineffective in failing to produce evidence, through the pathologist and autopsy photographs, that there was a lack of debris around Clark's head, which would support Adams' testimony that he did not stomp on Clark's head. Williams testified that Adams stomped on Clark's head after he hit him with the tire jack handle.

The pathologist confirmed that the skull fractures he observed on Clark were consistent with being hit on the head with a tire jack handle and were also consistent with the head being stomped on. He stated that Clark did not have any broken ribs. Adams testified that at the time, he could not really see, and that he did not know if he stomped on Clark's head or his back.

Assuming without deciding that Adams could establish deficient performance, he could not establish prejudice. The evidence showed that Adams stomped on Clark after Clark had fallen to the ground. The evidence at trial was not that Adams conclusively stated that he did not step on Clark's head, but that he was not sure. There was no indication that the stomp, whether it occurred to the back or head, was accidental, nor was there evidence that someone else struck Clark at any time during the altercation. The evidence was that Adams struck Clark with the tire jack handle and stomped on some part of his body and that Clark died from the injuries he sustained from Adams' actions. Whether the stomp occurred to the head or back does not change these essential facts. Adams cannot show prejudice. This assigned error fails.

### (c) Ability to Retreat

Adams assigns that trial counsel was ineffective by not introducing evidence from Adams that his van was blocked in and that he was prevented from retreating. Adams argues that he conceded on cross-examination that in hindsight he may have been able to get in his van and either call the police or drive away, but that this was conjecture by the State with the benefit of hindsight. He argues that, despite requesting trial counsel to call him back to the stand so that he could testify he did not feel he could safely retreat, trial counsel did not do so.

Adams' assigned error is related to counsel's alleged failure to call him back to the stand to testify that his van was blocked in. The record is replete, however, with Adams' testimony

both on direct examination and on cross-examination where he testified that he was blocked in by Clark's van. Through this testimony, the jury was aware that Adams believed he could not drive away, and counsel was not deficient in not recalling him to the stand to repeat testimony the jury had already heard. This assigned error fails.

### (d) Williams' Actions

Adams assigns that trial counsel was ineffective in failing to present evidence and argue to the jury that Williams did not stay on the scene, come back to the scene, or contact officers, which would have supported Adams' theory that Williams removed something from the scene. Adams testified that he thought he saw something in Clark's hand when Clark exited his van and that Williams removed it from the scene. Adams argues this evidence would have supported that he acted in self-defense. However, a review of the record shows that Williams admitted that he did not stay on the scene, that he returned and parked in a lot across from the scene, and that he did not contact officers but instead waited until they contacted him.

The jury was aware of all the information Adams claims trial counsel should have put before it. Further, whether Clark had a weapon when he exited his van does not negate the evidence of Adams' earlier ability to retreat; therefore, Adams cannot show either deficient performance or prejudice. This assigned error fails.

### (e) Adams' Belief Clark Had Weapon

Adams assigns that his trial counsel was ineffective in failing to produce evidence and argue that Adams could not see what was in Clark's hand to strengthen Adams' self-defense argument. But as discussed above, whether Clark had something in his hand does not negate Adams' testimony that he could have retreated after the initial altercation but did not do so. While Adams argues this would have supported his self-defense argument, the jury was not instructed on self-defense

because Adams could have safely retreated but chose not to do so. Even if we assume that Adams could establish deficient performance, he could not show prejudice. This assigned error fails.

### (f) Clark's Nickname

Adams assigns that his trial counsel was ineffective in failing to pursue character evidence of Clark's nickname to show Clark's propensity for violence and that he was the initial aggressor. During trial, but outside the presence of the jury, the State made an oral motion in limine to prohibit the use of Clark's nickname, "Trigger Trey." The State argued it was irrelevant and possibly prejudicial as it might be used to insinuate that Clark had a gun. Adams' counsel argued the nickname was relevant because most of the witnesses did not know "actual names," but, rather, they used nicknames. He confirmed he did not intend to use the nickname to insinuate that Adams knew the nickname and therefore would have thought Clark had a gun, or for any other "404" purpose. The court granted the State's motion, stating it did not see the relevance of Clark's nickname, "[e]specially if it's not being offered for any 404 purpose." See Neb. Evid. R. 404(1)(b), Neb. Rev. Stat. § 27-404(1)(b) (Cum. Supp. 2022).

[20] Adams argues on appeal that his counsel should have pursued use of the nickname to prove Clark's character and reputation. Evidence of a victim's violent character is probative of the victim's violent propensities, and many courts have recognized that evidence of a victim's violent character is relevant to the proof of a self-defense claim. *State v. Lewchuk*, 4 Neb. App. 165, 539 N.W.2d 847 (1995). See, also, § 27-404(1)(b) (providing evidence of person's character admissible in certain circumstances). Adams argues that his counsel should have pursued use of Clark's nickname to show that he was the first aggressor.

The State argues that any such attempt would have failed because the record does not explain how the nickname

"Trigger Trey" is evidence that Clark had a violent or aggressive character. But we read Adams' assignment of error as a claim that his counsel was ineffective for failing to develop an argument that the nickname was relevant as character evidence. Because this claim involves matters of trial strategy that are not in the record before us, we cannot address it. As such, it is preserved for postconviction review.

## VI. CONCLUSION

We find that the district court did not err in refusing to instruct the jury on self-defense. We reject Adams' claims of ineffective assistance of counsel except for his claim related to use of Clark's nickname, which is preserved for postconviction review. We affirm the judgment of the district court.

AFFIRMED.