IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. DAMPEER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

KIWAN C. DAMPEER, APPELLANT.


Filed January 7, 2025.    No. A-24-161.


Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.


RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.


## I. INTRODUCTION

Following a bench trial in the Douglas County District Court, Kiwan C. Dampeer was found guilty of four separate felony offenses. On appeal, he argues that he was denied effective assistance of counsel at trial and, therefore, his convictions should be overturned. Because we reject his claims of ineffective assistance of counsel, we affirm his convictions.

## II. BACKGROUND

On November 13, 2022, at approximately 4:07:19 a.m., Omaha police received a "ShotSpotter" report that gunshots had been fired "in the parking lot of Skinner" Elementary School. Around 4:08 a.m., police received a report that a shooting had occurred at a building near

- 1 -

the Skinner Elementary parking lot (the building). Following police investigation of these reports, Dampeer was one of the individuals arrested.

Dampeer was charged with (1) possession of a deadly weapon by a prohibited person, (2) discharging a firearm at an occupied building, (3) use of a deadly weapon to commit a felony, and (4) unlawful possession of a firearm on school grounds. He waived a jury and a bench trial was held, after which Dampeer was found guilty of all charges.

At the beginning of trial, the court received a certified copy of Dampeer's prior conviction, showing he was a prohibited person at the time of the offense. The State proceeded to call multiple witnesses including Omaha Police Department (OPD) personnel and DNA and firearms experts. The witnesses collectively testified to the following facts.

On November 13, 2022, Officers Joseph Paczkowski and Elliot Smith self-dispatched to the building after a report came over the dispatch radio that a shooting had occurred there. Upon arrival, officers observed a small crowd outside the building, multiple officers initiating investigation, and a gunshot victim lying on the sidewalk in front of the building. Witnesses informed officers that shots had been fired inside the building, and the officers tried to "corral people that were leaving the building and have them not leave."

Inside the building, there were several people, multiple bullet casings on the ground, alcohol, and other remnants of a party. There was also another gunshot victim who later died from her injuries.

During the ensuing investigation, Detective Jaime Desautels drafted a subpoena to obtain video surveillance footage from Skinner Elementary, located just south of the building. He also obtained video surveillance footage from the building, which was recorded on "DVR," rather than being stored in a "cloud-based" system.

Desautels explained that because the Skinner Elementary video footage was stored on a cloud-based internet platform, it reflected accurate timestamping. By matching up simultaneous occurrences and events in the Skinner Elementary and building video footage, he was able to determine that the DVR video obtained from the building showed a timestamp one hour and 19 seconds ahead of that reflected by the Skinner Elementary surveillance footage.

Screenshots and clips of the video footage were compiled and later marked as a separate exhibit and introduced at trial. Desautels described these screenshots and video clips as depicting "a person firing his weapon from the Skinner Elementary parking lot into the building." The accurate timestamp of the screenshot was 4:07:20, nearly the same time ShotSpotter reported gunshots having been fired in the parking lot.

To identify the person in the video, Desautels sent screenshots of video footage to the OPD gang unit. These screenshots were also introduced at trial. Officer Adam Kruse identified the individual in the screenshots as Dampeer. He based his identification on a 20-minute encounter he had with Dampeer in 2017.

During law enforcement's investigation, "apparent projectile damage" was found in the garage door, located on the rear of the building. However, law enforcement was unable to recover a projectile. Timestamps on footage and screenshots obtained from the building showed the garage door defect to have occurred at the same time ShotSpotter reported gunfire in the parking lot and that Dampeer was shown to be pointing a handgun toward the building while standing in the parking lot.

An OPD forensic technician, Miranda Smith, also collected two shell casings found in the Skinner Elementary parking lot, which was adjacent to the building's rear parking lot. These bullet casings were recovered from the area where the person in the video had stood, while holding and aiming the handgun.

The shell casings were examined and were determined to have been fired from the same handgun, a .40 caliber firearm; however, the firearm was never recovered. These two shell casings were different in class characteristics from other casings recovered at the scene. DNA testing on the shell casings revealed that Dampeer was excluded as a contributor of the DNA found.

Other video from Skinner Elementary depicted the person, now identified as Dampeer, wearing a cream-colored jacket with identifiable markings exiting, and later reentering, a Chrysler 300 vehicle. The Chrysler's license plate number was visible in the video footage, and officers used this number to establish the vehicle was registered to Dampeer.

Three days after the shooting, police pulled over a Chrysler 300 after running the license plate number and determining Dampeer was the registered owner. Dampeer was arrested during the stop. After Dampeer's arrest, multiple officers, including Desautels, executed a search warrant obtained for Dampeer's home and recovered a cream-colored jacket with the same distinct markings as the one worn by the individual in the video surveillance footage.

Following this testimony, the State rested and Dampeer presented no additional evidence. The district court found Dampeer guilty of all four charges. Prior to sentencing, Dampeer retained new counsel who continues to represent him on appeal. Dampeer assigns that he was denied effective assistance of trial counsel, and therefore his convictions should be vacated.

## III. ASSIGNMENTS OF ERROR

Dampeer assigns eight different errors related to his trial counsel's performance. Restated and condensed, Dampeer assigns his trial counsel was ineffective in failing to challenge Kruse's identification of him and in failing to object to the testimony of multiple witnesses.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

Dampeer contends on appeal that his trial counsel provided ineffective assistance. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Adams, supra*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination

of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitute deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Adams, supra.* To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Having established the general standards and principles of ineffective assistance, we now turn to Dampeer's claims.

### 1. FAILURE TO CHALLENGE IDENTIFICATION

Dampeer assigns his trial counsel was ineffective in failing to challenge the identification from Kruse and establish confirmation bias.

### (a) Additional Facts

As previously mentioned, Desautels testified that he sent screenshots of Skinner Elementary surveillance footage to the OPD gang unit in an effort to identify the depicted individual. These screenshots showed the individual outside of a Chrysler 300 and holding a handgun.

Kruse, an OPD detective assigned to the gang unit at the time of the shooting investigation, testified that he was able to make a positive identification of Dampeer as the individual shown in screenshots. Kruse testified that he made the identification based on Dampeer's "facial features, hair, and [] physical characteristics," which he had become familiar with because of a 2017 interview he had conducted with him in an unrelated case.

### (b) Analysis

Dampeer argues that Kruse's identification was not based upon the 2017 interview; rather, he asserts that Kruse had information that the Chrysler was registered to Dampeer which caused Kruse to form a belief that the individual in the screenshots was Dampeer. He contends that Kruse's identification was based on confirmation bias rather than a true identification. He discredits Kruse's testimony that he could identify Dampeer based on the amount of time that had

elapsed since Kruse interviewed him, the shortness of the initial encounter, and Kruse's inability to recall what clothing Dampeer was wearing at the time. We reject this argument.

Dampeer makes no claim that his physical features or appearance has changed since his 2017 interview with Kruse. To the contrary, Kruse testified that he had contact with Dampeer 5 years prior and that he was able to recognize him from one of the photographs sent to him based on Dampeer's "hairstyle, the facial features." This implies that neither Dampeer's hairstyle nor facial features had changed. Dampeer challenges Kruse's recollection because Kruse was unable to describe the clothing Dampeer was wearing when Kruse interviewed him 5 years prior. A person's inability to recall another's clothing on a specific date does not preclude them from identifying their hairstyle or facial features.

Moreover, neither Dampeer nor the State introduced any evidence to suggest that Kruse was aware of the Chrysler's license plate number or the vehicle registration prior to making the identification. The license plate number is illegible in the photos sent to the gang unit which Kruse reviewed. The license plate number was obtained only through screenshots of video footage not provided to the gang unit. Rather, Kruse testified that he made his identification based upon his recollection of Dampeer's hairstyle and physical features he had observed 5 years prior.

In our review of the record, there is no evidence or testimony to suggest Kruse had any knowledge that Dampeer was the registered owner of the Chrysler prior to making the identification. We therefore conclude there were no grounds for cross-examination on the theory of confirmation bias and Dampeer cannot show that his trial counsel was ineffective for failing to engage in such questioning. See *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024) (counsel not ineffective for failing to raise meritless argument). This assigned error fails.

## 2. FAILURE TO OBJECT

### (a) Desautels' Suspect Identification

Dampeer assigns that trial counsel was ineffective for repeatedly failing to object to the lack of foundation for Desautels' identification of him in the photographic and video evidence.

#### (i) Additional Facts

Desautels was heavily involved in the shooting investigation. Throughout his testimony he referred to the person identified in multiple exhibits as Dampeer. He testified that, when he originally viewed the videos, he was not able to identify the individual as Dampeer, but that Kruse had informed him of the suspect's name. Desautels further stated that, after he had become familiar with Dampeer throughout the investigation, he was then able to also make a positive identification. Additionally, he testified that the jacket seen in the photographs and videos matched the one found in Dampeer's home, further indicating that Dampeer was the individual depicted.

#### (ii) Analysis

Dampeer argues that Desautels had no independent knowledge that the suspect depicted in these photographs and video was him, and therefore, Desautels should have been precluded from referring to him by name.

In *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023), the defendant asserted his trial counsel was ineffective for failing to object to officers' testimony identifying persons shown on

surveillance video. The defendant argued, in part, that the officers' statements lacked proper foundation. See *id.*

The Nebraska Supreme Court held that, even if it were to assume the officers' testimony was inadmissible and defense counsel was deficient in failing to object, the defendant could not show prejudice. See *id.* The Court reasoned that a copy of the video without narration was admitted into evidence and that officers had made clear their identifications were not based solely on the video. See *id.* Rather, the officers stated that the persons depicted were "later identified" or that one individual was "believed to be" the defendant. See *id.* Also, an eyewitness had testified that the defendant had taken the same actions as the individual seen on the video, who officers testified was believed to be the defendant. See *id.* The Court ultimately stated that the "'obvious deduction' from [the eyewitness'] testimony, in combination with the surveillance video," was that the defendant had committed the crime, and that, therefore, the defendant's assignment of error failed. *Id.* at 962, 994 N.W.2d at 91.

Like *State v. Mabior, supra*, Dampeer takes issue with Desautels' testimony in which he identifies the individual depicted in surveillance video footage as Dampeer. However, the State introduced a copy of the footage without narration, which the court received into evidence without objection. Moreover, Desautels admitted that although he was initially unable to identify the individual in the video footage, his later identification of Dampeer was not based solely on the video. Rather, he initially obtained Dampeer's name from Kruse, and, because of his interactions with Dampeer during the investigation, he "later identified" Dampeer to be the individual in the video.

Also, although no eyewitnesses testified, there was substantial evidence to show that Dampeer was the individual in the video. The vehicle the individual is seen exiting and entering was registered to him, police recovered a jacket from his home matching the one worn by the individual in the video, and an admissible identification by Kruse was already in evidence. See *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024) (extent of witness' familiarity with defendant's appearance goes to identification's weight not admissibility).

Dampeer argues that, if counsel had objected, Desautels' identification would not have come in, and Kruse's identification would not have been sufficient to sustain the judgment. We reject this argument. As in *State v. Mabior, supra*, the "obvious deduction" from the jacket, license plate registration, and Kruse's identification, in combination with the surveillance video, is that the depicted individual is Dampeer. He cannot show prejudice and, accordingly, this assignment of error fails.

(b) Testimony Identifying Parking Lot as School Grounds

Dampeer assigns as error his trial counsel's failure to object on lack of foundation to witnesses' testimony that the parking lot viewable in certain exhibits was the parking lot of the school.

*(i) Additional Facts*

OPD forensic technician Smith referred to the parking lot depicted in multiple exhibits as either "the parking lot of the school" or the "school parking lot." Technician Smith was at the scene and took many of the photographs to which she testified, including those taken while she

was standing in the parking lot in question. When asked whether the building depicted in one of the photographs was Skinner Elementary, she responded "I believe so." No foundational objections were made to her references of the parking lot as the school parking lot.

On multiple occasions during Desautels' testimony, he referred to the parking lot adjacent to the school as the "Skinner Elementary parking lot." No objection was made to this testimony. On cross-examination, Desautels stated he did not determine where Skinner Elementary's property boundaries end. Thereafter, on re-direct examination, the court sustained a foundational objection when the State asked Desautels to identify the parking lot area adjacent to the elementary school on an aerial photograph.

*(ii) Analysis*

Dampeer was convicted of unlawful possession of a firearm on school grounds. Consequently, the State was required to prove that Dampeer was on school grounds when he possessed a firearm. See Neb. Rev. Stat. § 28-1204.04(1) (Reissue 2016).

Dampeer argues that the State failed to lay proper foundation for Technician Smith's statements because her identification of the school as Skinner Elementary was equivocal. He argues that "[t]his response did not indicate that she was able to lay the foundation for an essential element." Brief for appellant at 16. We disagree with Dampeer's conclusion.

Immediately prior to being asked whether the school was Skinner Elementary, Technician Smith had identified the building as "a school." Any uncertainty in her subsequent response went to the name of the specific school, not to whether it was a school. Section 28-1204.04(1) reads, "Any person who possesses a firearm in a school, on school grounds, in a school-owned vehicle, or at a school-sponsored activity or athletic event is guilty of the offense of unlawful possession of a firearm at a school." Therefore, Technician Smith's identification of the parking lot as a school parking lot was sufficient.

To the extent Dampeer claims an objection should have been made to Technician Smith's reference to "the school parking lot" we reject any argument that she lacked proper foundation. Technician Smith testified that she was at the scene and had personally taken many of the photographs, including those taken while she was standing in the parking lot in question. This provided her with an opportunity to view the area, including the layout of the school and its adjacent parking lot. This provides sufficient foundation for her statement that the parking lot in question was the school parking lot. See *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021) (witnesses may testify to matters of which they have personal knowledge). Thus, any objection on foundation to these references by Technician Smith would have been meritless and counsel's failure to object was not deficient. See *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024).

Dampeer argues that counsel should have objected to Desautels' references to the parking lot as Skinner Elementary's parking lot because Desautels lacked the foundation to make that determination. Dampeer bases his argument on an exchange during cross-examination, in which Desautels stated he did not determine where Skinner Elementary's property boundaries end. On redirect, the court sustained a foundational objection when Desautels attempted to identify the parking lot on an aerial photograph as the "north Skinner Elementary parking lot." The record is insufficient to determine why Dampeer's trial counsel did not make other foundational objections.

However, even if counsel was deficient in failing to object to earlier questions, Dampeer cannot prove he was prejudiced by counsel's alleged failure. As we have explained, the State had previously offered Technician Smith's testimony, in which she properly identified the parking lot in multiple exhibits as the parking lot of the school. Further, other evidence was received, including multiple photographs and an aerial photograph of the school and the adjacent parking lot, upon which the trier of fact could reasonably determine that the parking lot was part of the school grounds. See *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024) (essential element may be proven based on reasonable inferences by trier of fact derived from circumstantial evidence). Dampeer therefore cannot show prejudice. See *id.* (erroneous admission of evidence not reversible error if cumulative and other properly admitted evidence supports finding by trier of fact). We reject Dampeer's argument that he was prejudiced by counsel's failure to object to Desautels' reference to the parking lot as the school's parking lot. Accordingly, this assignment of error fails.

(c) Desautels' Testimony Regarding ShotSpotter

Dampeer assigns trial counsel's failure to object to Desautels' testimony regarding ShotSpotter constituted ineffective assistance.

*(i) Additional Facts*

The record citations provided by Dampeer disclose Desautels' testimony that ShotSpotter registered shots fired in the Skinner Elementary parking lot at 4:07:19 a.m., and that this report led him to investigate the parking lot area. He testified to watching the Skinner Elementary surveillance video footage recorded in the same time frame as the ShotSpotter report. This video footage revealed Dampeer "shooting" a gun at the building at 4:07:20 a.m. He then watched the building's surveillance footage and found the defect had occurred in the garage door at 4:07:20, the same time the ShotSpotter report was made and that Dampeer had pointed a gun toward the building. Desautels also stated that the location provided by the ShotSpotter report was used to locate the bullet casings in the Skinner Elementary parking lot.

When the State asked Desautels what ShotSpotter was, Desautels responded it is a system that

documents gunfire in the area and it will pinpoint a location, and that location has a radius around it of where the shots occurred. So it will give you a dot. Most of the time the dot is very accurate where the shots are fired and you'll be able to find evidence, as in casings, where that dot was.

Dampeer's trial counsel objected to this testimony on foundational grounds, and asked Desautels' answer be stricken. The court overruled the objection.

*(ii) Analysis*

Dampeer asserts that Desautels did not have the requisite foundation to properly testify about ShotSpotter, and that counsel should have objected. He argues he was prejudiced because the State used the ShotSpotter testimony to establish the time of gunfire and chronologically sync it to video footage of the individual holding the gun, which helped to establish essential elements of the charges against him. We reject this argument.

Dampeer states that "[o]bjections should have been made on pages 190, 210, 211, 212, and 229 of the Bill of Exceptions. Desautels did not have the requisite foundation to lay for the evidence." Brief for appellant at 22. He does not identify what foundation would have made the testimony proper nor explain why Desautels lacked the ability to lay such foundation.

In *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022), the defendant argued that his trial counsel was ineffective by failing to pursue a motion to quash. The Supreme Court held that the defendant failed to raise with sufficient particularity the nature of his claim because he did not provide the Court with grounds on which the information would have been quashed. See *id*. The Court explained it would not scour the record for possible grounds on which the motion may have been granted. See *id*.

Similarly, here, Dampeer provides no explanation of why a foundational objection to Desautels' testimony would have been sustained. We find he has failed to raise with sufficient particularity the nature of this claim.

Moreover, the record citations provided by Dampeer refute his argument that a foundational argument would have been sustained. These citations disclose that Desautels testified only as to how he proceeded with the investigation in response to the ShotSpotter report. Foundation as to how ShotSpotter technology worked was not required for this testimony. Furthermore, the one foundation objection counsel made to Desautels' testimony regarding ShotSpotter was overruled. Foundational objections would have been meritless; thus, trial counsel was not deficient in failing to object. See *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024).

(d) Testimony Showing Building Occupied During Shooting

Dampeer assigns on appeal that he received ineffective assistance of counsel when his trial counsel failed to object to Desautels' testimony that people were inside the building at the time of the alleged shooting from the Skinner Elementary parking lot.

*(i) Additional Facts*

Paczkowski testified that he and his partner, Officer Smith, were en route to the building immediately following a report of a shooting having occurred there. Upon our review of the Skinner Elementary surveillance footage, the officers arrived at the building at 4:08:38 a.m.

Paczkowski further stated that, after he entered the building, he observed four witnesses and a gunshot victim who was being attended to by fire department personnel. This victim was so severely injured she later died. Officer Smith testified that people at the scene reported shots had been fired inside the building.

Desautels testified the shooting at the building was reported around 4:08 a.m., and that he had arrived at the scene at approximately 7 a.m. Desautels stated Dampeer was seen on Skinner Elementary surveillance footage raising a gun and "shooting" toward the building at the timestamp reflecting 4:07:20 a.m. The State questioned Desautels, "In looking at these – all the footage you looked at, by the time [] Dampeer is shooting his gun, are there still people inside that building?" Desautels answered "Yes." Dampeer's trial counsel did not object to this testimony.

Dampeer argues that Desautels did not have adequate foundation to make the assertion that people were still in the building when shots were fired from the parking lot because Desautels had arrived at the scene 3 hours after the shooting. Dampeer also argues that this testimony was prejudicial because, without establishing the building was occupied at the time shots were fired, the State would have been unable to establish an essential element for his conviction of firing a gun at an occupied building under Neb. Rev. Stat. § 28-1212.02 (Reissue 2016). Further, he asserts that Paczkowski's and Officer Smith's testimony that people were inside the building when they arrived does not establish those people were inside at the time shots were fired from Skinner Elementary's parking lot. We disagree.

The record does not detail why Dampeer's trial counsel did not object to Desautels' testimony that the building was occupied at the time of the shooting from the parking lot. It is thus insufficient to determine whether trial counsel's failure to object was deficient. See *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024) (trial strategy may include decision whether to object).

However, Dampeer cannot prove that trial counsel's failure to object was prejudicial. The district court had before it all of the video evidence upon which Desautels relied to conclude that the building was occupied at the time the shots were fired. The video showed that after the initial shooting in the building, Dampeer was in the school parking lot aiming a gun at the building around 4:07:20 a.m. Police are seen arriving at the building at approximately 4:08:38 a.m. When Paczkowski entered the building, he observed fire department personnel "working on" an injured individual in "the main party area" beyond the "entry area" who ultimately died from her injuries. There were also four witnesses inside the building.

Given the victim's extensive injuries and her location in the "main party area," it is unlikely she would have been able to exit the building after the initial shooting; much less, reenter the building and make her way through the entry area into the main party area in the approximately 80 seconds between the shots fired from the parking lot and officers' arrival at the building. We determine circumstantial evidence supports a reasonable inference that at least the injured individual was inside the building at the time shots were fired from the parking lot; thus, the building was occupied. See *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023) (circumstantial evidence may provide logical inference disputed fact exists).

Considering the evidence before the court, Dampeer cannot demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024) (erroneously admitted evidence not reversible error if cumulative and other properly admitted evidence supports finding by trier of fact). This assignment of error fails.

### (e) Testimony Regarding People in Video Reacting to Gunfire

Dampeer assigns that his trial counsel was ineffective in failing to object on foundation and speculation to Desautels' testimony in which he stated people in certain video footage were reacting to gunfire.

*(i) Additional Facts*

Desautels testified regarding video footage and the reactions of persons depicted therein. For the sake of clarity, we recall that the following timestamps are taken from the building's DVR footage and are 1 hour and 19 seconds ahead of those in Skinner Elementary video footage.

Desautels responded to a line of questioning regarding a clip of video footage obtained from the building.

> [The State]: You can't see anybody. You can see figures, but you can't -- in this video you can't see someone with a gun or anything like that?
>
> [Desautels]: No.
>
> [The State]: If you didn't know what happened from all of the videos, you wouldn't know –
>
> [Desautels]: Shots are fired on this camera view at 5:07:39, so with that event and watching the people that are in view, their reaction.

Desautels later testified that other video footage showed multiple parties "duck" for cover. Desautels further stated, regarding this same video, that a change in the people's behavior was visible at the timestamp 5:07:39, reflecting the time ShotSpotter reported shots fired from the parking lot.

*(ii) Analysis*

Dampeer argues that his counsel's lack of objection constituted deficient performance because Desautels' testimony was speculative, and he lacked foundation for the statement. He contends that the State should have called the witnesses "to testify as to why they did what they did." Brief for appellant at 23. Dampeer also asserts he was prejudiced by his trial counsel's lack of objection, because not objecting allowed the video to become conclusive evidence that gunfire did occur at that time and location.

We disagree that Desautels lacked foundation for his testimony. Our review of the portions of the record cited reveal that Desautels is verbalizing what he saw on the video footage. For example, he describes "two people right here in between these two cars, they go down on the ground . . . and there's two more parties that kind of cut in the southwestern direction." He further explains:

> This party right here, he's going to be up here and he's going to duck down. There's going to be a female party wearing green. She's going to run down. And then basically at 5:07:39 is when the shots are fired at Skinner and you're just going to see all their behaviors change.

Desautels' testimony described what he saw on the video as it was played for the court. No additional foundation was necessary for this testimony. Contrary to Dampeer's assertion that "[t]his allowed this evidence to come in as being conclusive of what was alleged," the testimony was merely Desautels' interpretation of what he saw on the video; the court was able to assess whether it agreed by viewing the videos itself. Brief for appellant at 23.

Any objection on speculative or foundational grounds would have been meritless; thus, counsel's performance was not deficient for failing to object. See *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024).

(f) Testimony That Bullet Caused Garage Defect

Dampeer assigns that he was denied effective assistance of counsel when trial counsel repeatedly failed to make foundational objections to Desautels' testimony that the defect in the garage door was caused by a bullet.

*(i) Additional Facts*

Desautels testified that a "bullet defect" in the building's garage door had been discovered during the investigation of the scene. Following this discovery, he watched the surveillance video obtained from the building, focusing particularly on the timeframe in which ShotSpotter had reported shots fired from the parking lot.

Desautels testified that the building's surveillance video showed a defect appearing on the building's garage door at 4:07:20 a.m. He further testified that video evidence showed an individual in the Skinner Elementary parking lot pointing a handgun toward the building at the same time the defect appears in the garage door. Desautels also stated two handgun bullet casings were later recovered in the exact area in which the video showed the individual was standing while pointing the gun.

*(ii) Analysis*

Dampeer argues trial counsel's failure to object constituted deficient performance, and that he was prejudiced because the State sought to establish the damage to the garage was caused by a bullet to support his convictions on all four counts. We find this argument unpersuasive.

A lay witness may render an opinion provided the witness conveys the concrete primary facts upon which the opinion is based. See *State v. Anthony*, 316 Neb. 308, 4 N.W.3d 393 (2024). Generally, the lay witness' opinion must be based on the witness' perception, foundation must establish a rational basis for the opinion, and the testimony must be helpful to the trier of fact. See *id.* See, also, Neb. Rev. Stat. § 27-701 (Reissue 2016). A witness is not permitted to render an opinion based on obvious speculation or conjecture. *State v. Anthony, supra.*

Desautels testified to viewing multiple pieces of evidence and explained how each contributed to his conclusion. We find the evidence provided a rational basis for Desautels' statement that the garage door defect was caused by a bullet. Therefore, Dampeer's trial counsel not was not deficient, as any foundational objection would have been meritless. See *State v. Adams, supra.* This assignment of error fails.

(g) Desautels' Testimony That Shooting From Parking Lot Occurred

Dampeer assigns his trial counsel was ineffective in failing to object on foundational grounds to Desautels' testimony that a shooting took place from the parking lot.

*(i) Additional Facts*

Desautels testified that he was able to see someone on surveillance footage raising a handgun and "shooting" from the Skinner Elementary parking lot toward the building, identifying Dampeer as the "shooter." Desautels stated that a defect appeared in the building's garage door at the same time this individual raised a gun toward the building. He reported that bullet casings were found in Skinner Elementary's parking lot, in the same area.

*(ii) Analysis*

Dampeer asserts that Desautels lacked foundation to testify that a gun was actually fired in the parking lot. He argues, "Possession is one thing. Firing is another." Brief for appellant at 19. He contends he was prejudiced by the testimony because, without proving a gun was discharged, he could not have been convicted of discharging a firearm at an occupied building, or use of a deadly weapon to commit a felony. See § 28-1212.02. See, also, Neb. Rev. Stat. § 28-1205 (Reissue 2016). We find his argument unpersuasive.

As previously explained, the State presented video evidence that an individual in the Skinner Elementary parking lot had pointed a handgun toward the building. Other video evidence showed a defect appearing on the building's garage door nearly simultaneously with the individual raising a handgun in that direction and reactions by persons in the area. Moreover, Desautels stated that two handgun bullet casings were later recovered in the exact area in which the video showed the individual was standing while pointing the gun.

As in our previous analysis, Desautels described what he saw on the videos and explained how he reached his conclusion that shots were fired from the parking lot. Proper foundation was laid for this testimony, as the evidence provided a rational basis for Desautels' conclusion. See *State v. Anthony*, 316 Neb. 308, 4 N.W.3d 393 (2024). See, also, § 27-701. Because a foundational objection would have been meritless, Dampeer's trial counsel was not ineffective. See *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024). This assignment of error also fails.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment and convictions of the district court.

AFFIRMED.