Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/05/2024 09:07 AM CST

State of Nebraska, appellee, v.
Bernard R. Turner, appellant.

___ N.W.2d ___

Filed January 5, 2024.    No. S-23-225.

1. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.
2. **Criminal Law: Motions for Continuance: Appeal and Error.** A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Trial: Evidence: Prosecuting Attorneys: Due Process.** The nondisclosure by the prosecution of material evidence favorable to the defendant, requested by the defendant, violates due process, irrespective of the good faith or bad faith of the prosecution. But due process is not violated where the evidence is disclosed during trial.
5. **Motions for Continuance: Evidence: Waiver.** If a continuance would have been a sufficient remedy for a belated disclosure in violation of Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2022), a defendant who fails to request a continuance waives any rights he or she may have had pursuant to § 29-1912.
6. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

7. **Criminal Law: Evidence: Confessions: Proof.** A voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation.

8. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

9. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

10. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

11. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

12. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

13. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

14. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

15. ____: ____. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

16. ____: ____. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Megan E. Shupe and Steven M. Delaney, of Reagan, Melton & Delaney, L.L.P., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Bernard R. Turner challenges his conviction, pursuant to jury verdict, for first degree murder. He contends that the district court erred in granting the State's motion to continue trial, that the evidence was insufficient to support his conviction, and that he received ineffective assistance of trial counsel. Finding no merit to his appeal, we affirm.

## II. BACKGROUND

In November 2020, the State charged Turner with first degree murder, a Class IA felony,[1] arising from a shooting that occurred on October 18, 2013, in Omaha, Nebraska. Earlier in 2020, law enforcement received information that Turner was responsible for the shooting and had confessed to murdering the victim, Julius Vaughn.

---

[1] See Neb. Rev. Stat. § 28-303 (Cum. Supp. 2022).

Turner pled not guilty, and the court set the case for a jury trial.

### 1. STATE'S MOTION TO CONTINUE TRIAL

Shortly before the scheduled trial date, the court held a hearing, during which the State orally moved to continue trial. Turner objected to the motion.

The following day, the court held a hearing on the motion. The State asserted that the prior afternoon, the Omaha Police Department "made [it] aware" that a cell phone had been seized at or around the time of the 2013 shooting and that that cell phone had belonged to Turner. It explained that the cell phone had been "seized in a separate investigation, which is why we were not aware of it until yesterday." Due to its belated discovery, the State argued that it needed additional time to analyze the cell phone. It asserted that there may be "not only inculpatory information or evidence, but exculpatory information or evidence" related to it. In this regard, a lengthy exchange took place on the record.

After hearing the parties' arguments and considering Turner's speedy trial rights, the court sustained the motion.

### 2. DISCLOSURE OF CELL PHONE EVIDENCE

Prior to trial, the State disclosed the general contents of the seized cell phone, a redacted affidavit and search warrant used to obtain it, and redacted law enforcement reports regarding it. Turner conceded on the record that the State disclosed those materials, which the court received as exhibit 2 for purposes of a hearing.

Following the State's disclosure, Turner did not file a motion for continuance. Nor did he file a motion to suppress the evidence or otherwise object to its admission.

### 3. JURY TRIAL

The court held a 7-day jury trial, during which both parties presented evidence. We summarize testimony and facts

pertinent to the instant appeal, viewed in the light most favorable to the State.

### (a) State's Evidence

The State offered the testimony of multiple witnesses, including Vaughn's family members and neighbors, criminal investigators, and Kevin Johnson (Turner's friend and the recipient of his confession). The State also offered nearly 200 exhibits.

### (i) Vaughn's Family's Testimony

Two of Vaughn's family members testified at trial. Vaughn's sister, Jalisa Vaughn, testified that Vaughn and Turner were friends and frequently spent time together prior to the shooting. She stated that around that time, Turner had just been released from prison and Vaughn had just purchased a vehicle. When asked whether Vaughn was "the one that was kind of driving [Turner] around," Jalisa answered, "Yes."

Jalisa testified that on October 18, 2013, Vaughn and Turner spent most of that day together, hanging out at a barbershop with Jalisa and others. She left the barbershop around 5 or 6 p.m. to go home and get ready for a night shift at work. Jalisa stated that Vaughn called her after she arrived home—at the apartment where she, Vaughn, and their mother lived—and told her that he was still with Turner and that he would be arriving to retrieve some money. The apartment was located near 22d and Vinton Streets in Omaha.

Jalisa testified that at approximately 8 p.m., Vaughn arrived at the apartment. He then asked her for money, she declined, and Vaughn left. Shortly thereafter, Vaughn returned and appeared to be "real nervous." At this point, their mother gave him some money. Before leaving the apartment the second time, Vaughn placed a call on his cell phone, during which Jalisa heard him say, "'Here I come, bro. I'll be out in a minute.'"

Jalisa further testified that when she left for work later that evening, she saw Vaughn's vehicle with the lights on in the

parking lot and "a lot of police." Jalisa stated that she "didn't know what was actually going on" but did not want to get involved because "they [were] gang affiliated." On her way to work, she received a phone call from Vaughn's girlfriend, who informed her, "'[Turner's] in the closet. He just said that your brother is dead.'" After speaking with Vaughn's girlfriend, Jalisa called her mother and told her to go outside, because "'[s]omething's not right.'"

Vaughn's mother also testified regarding the evening of October 18, 2013, and generally recounted the same events.

### (ii) Neighbors' Testimony

The State adduced the testimony of two individuals who lived in nearby apartment buildings at the time of the shooting. The first individual testified that she heard "[m]ultiple gunshots" fired in a row on the evening of October 18, 2013. She testified that based on the sound of the gunshots, she did not know "exactly where they came from," but she "kn[e]w it was very close." She did not observe these gunshots being fired.

The second individual testified that around 8:30 p.m., she heard what she believed to be "knocks" on the door of her apartment. She testified that these "knocks were particularly hard." She opened her apartment's door, which faced a parking lot that joined the lot of the Vaughns' apartment building, and observed Vaughn's vehicle parked there, next to her vehicle, with the lights on. At that point, she saw movement within his vehicle, and "it was obvious that there was a person in there."

That individual further testified that at around 9:25 p.m., she left her apartment and walked to the parking lot. As she approached her vehicle, she observed Vaughn alone, unresponsive and reclined in the driver's seat of his vehicle, with the lights still on and the passenger door open. She further observed that the driver's side rear window of the vehicle was shattered. Believing that Vaughn was "unconscious or dead," she called the 911 emergency dispatch service.

### (iii) Investigators' Testimony
### and Related Exhibits

A medical responder testified that within minutes of receiving the 911 call, he arrived at the parking lot where Vaughn's vehicle was located. He observed that Vaughn had no pulse, was not breathing, and appeared to have a gunshot wound below his right ear. It was readily apparent to him that Vaughn was dead. The medical responder further observed that there were "brass shell casings" on the pavement outside the passenger side of Vaughn's vehicle, on the floor of the vehicle below the front passenger seat, and on the front passenger seat. He testified that the front passenger door was open. This testimony was corroborated by the testimony of other investigators who arrived on the scene and various exhibits.

The State presented shell casings recovered inside and around Vaughn's vehicle, video footage and photographs showing the scene of the shooting, and testimony regarding an autopsy that indicated Vaughn died as a result of the shooting. The autopsy revealed that Vaughn sustained a total of 10 bullet wounds to his head, neck, torso, arms, and hand. Although only seven bullets were recovered from his body, a medical examiner testified that Vaughn was shot 9 or 10 times.

The State also presented exhibits linking Turner to the scene of the shooting. Forensic investigators identified a latent fingerprint recovered from the front passenger doorframe of Vaughn's vehicle as belonging to Turner. They also found his DNA on a cigarette butt recovered from inside the vehicle. Additionally, the State presented evidence adduced from cell tower metadata, which placed Turner near Vaughn's apartment building from approximately 8:13 to 8:33 p.m. on the day of the shooting.

### (iv) Johnson's Testimony
### and Gun Retrieval

The State adduced the testimony of Johnson, who testified that Turner was responsible for the shooting and had

confessed to killing Vaughn. Johnson testified that he received a phone call from Turner on the evening of October 18, 2013, during which Turner requested a ride and asked Johnson to pick him up near 21st or 22d and Elm Streets. Johnson testified that this location was "[a] couple blocks away" from Vaughn's apartment building. Once Johnson arrived, Turner ran up to his vehicle. He appeared to be "[o]ut of breath" and sweating "[a] little bit." After Turner got into Johnson's vehicle, they left. Turner then told Johnson, "'That [racial epithet] gone.'"

Understanding this statement to mean that Turner had shot someone, Johnson asked Turner if "he still ha[d] a gun on him." Turner responded, "'Yes,'" and Johnson told him to "get it out of my car." Johnson then "pulled over and told him to throw the gun out." According to Johnson, Turner got out of the vehicle and threw what Johnson believed to be a firearm down a storm drain located near 29th Street and Ellison Avenue. Turner then got back into the vehicle, and Johnson dropped him off where he was staying with "[h]is kids' mom."

Johnson testified that 2 years after the shooting, in 2015, Turner finally confessed to him that he had killed Vaughn. Johnson stated that Turner told him, at that time, that he believed Vaughn had killed his cousin and that Vaughn had lied about it, and therefore, Turner said that he "would feel like a bitch if he wouldn't have did something."

In 2020, while Johnson was facing pending federal charges, he informed law enforcement about Turner's confession and that the murder weapon was located in a particular storm drain. Law enforcement later recovered a firearm from that storm drain, which was located near 29th Street and Ellison Avenue. The firearm was corroded and covered in leaves and other debris, indicating that it had been there for "quite some time."

Ballistics evidence established that the bullets used in Vaughn's murder could have been fired only from 1 of 13

different firearm models. The firearm recovered from the storm drain was consistent with being one of those models.

### (v) Other Corroborating Evidence

The State presented additional evidence corroborating Johnson's testimony. Turner's cell phone records showed that on October 18, 2013, he called Johnson six times between 8:13 and 8:36 p.m. Turner and Johnson also exchanged text messages a few days after the shooting. Turner stopped responding when Johnson sent text messages stating, "All them [racial epithet] think it's u."

At the conclusion of the State's case, Turner moved to dismiss the charge against him, arguing that the State failed to provide sufficient evidence to support his conviction. The court overruled his motion.

### (b) Turner's Defense

Turner presented the testimony of two witnesses. He adduced alibi evidence from the first witness, who was pregnant with his child at the time of the shooting. The second witness, purported to be a former crime analyst, opined that she could not "precisely pinpoint a location" based on the State's cell tower metadata.

After resting Turner's case, his trial counsel renewed his motion to dismiss the charge against Turner. The court overruled the motion.

### 4. Verdict and Sentencing

Following trial, the jury convicted Turner of first degree murder, and the court sentenced him to life imprisonment.

Turner filed a timely appeal, and the court appointed different counsel to represent him. Because of the imposition of life imprisonment, the appeal was placed on our docket.[2]

---

[2] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2022).

### III. ASSIGNMENTS OF ERROR

Turner assigns four errors, which we reorder for discussion. First, he assigns that the district court erred by allowing the State to continue trial based on evidence in the possession of the Omaha Police Department but not provided or examined until the week prior to the original trial date. Second, he assigns that the evidence presented at trial lacks the probative value to sustain a guilty verdict because, he asserts, no rational trier of fact should have found him guilty of first degree murder.

Turner's other two assignments allege ineffective assistance of trial counsel. He assigns that his trial counsel's performance was deficient for (1) "failing to zealously advocate for [him]" and (2) "failing to present an adequate defense." He asserts that but for his trial counsel's deficient performance, the result of the proceeding below would have been different.

### IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[3] Additional standards of review will be set forth, as appropriate, in the analysis.

### V. ANALYSIS

#### 1. Motion to Continue Trial

Turner first assigns that the district court erred in sustaining the State's motion to continue trial "based on evidence in the possession of the Omaha Police Department but not provided or examined until the week prior to the original trial date."

#### (a) Standard of Review

[2,3] A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.[4]

---

[3] *State v. Hammond, ante* p. 362, 996 N.W.2d 270 (2023).

[4] *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[5]

## (b) Discussion

Turner presents two arguments, which are premised on *Brady v. Maryland*[6] and Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2022). Regarding *Brady*, Turner generally argues that the timing of the State's disclosure of the cell phone and its admission at trial violated his constitutional right to due process. Regarding § 29-1912, he seems to suggest that the timing of the State's disclosure violated the court's discovery order and argues that the appropriate remedy was to exclude the pertinent evidence at trial.

We address both arguments. Then, we consider whether the district court abused its discretion in sustaining the State's motion to continue trial.

[4] First, we conclude that neither the timing of the State's disclosure nor the admission of the evidence at trial violated Turner's right to due process. Under *Brady*, the nondisclosure by the prosecution of material evidence favorable to the defendant, requested by the defendant, violates due process, irrespective of the good faith or bad faith of the prosecution. But due process is not violated where the evidence is disclosed during trial.[7] Here, it is undisputed that the State disclosed the pertinent evidence *before* trial, and defense counsel was given an opportunity to cross-examine the State's witnesses about it. The timing of the State's disclosure and

---

[5] *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

[6] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[7] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016); *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). See, *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999). See, also, *U.S. v. Gonzales*, 90 F.3d 1363 (8th Cir. 1996).

the admission of the evidence at trial did not violate Turner's right to due process.

[5] Second, we must determine whether the timing of the State's disclosure violated § 29-1912. That section is Nebraska's principal discovery statute in criminal cases, which sets forth a list of evidence that may be subject to discovery at the discretion of the trial court.[8] Another section[9] sets forth various remedies the court may employ when there is a claimed violation of a discovery order: The court may (1) order such party to permit the discovery or inspection of materials not previously disclosed, (2) grant a continuance, (3) prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or (4) enter such other order as it deems just under the circumstances. Importantly, we have held that if a continuance would have been a sufficient remedy for a belated disclosure in violation of § 29-1912, a defendant who fails to request a continuance waives any rights he or she may have had pursuant to § 29-1912.[10]

Turner argues, without elaborating, that "a continuance would not cure the prejudice caused"[11] and that the proper remedy was to exclude the pertinent evidence. We are not persuaded. While a court may order that a party not be permitted to offer evidence at trial which it failed to disclose, this court has stated a preference for a continuance in such situations.[12] Turner fails to explain with any specificity how a further continuance would not have cured any prejudice to him, and in any event, he did not request one. Therefore, we conclude that Turner waived his right to relief from the State's belated disclosure.

---

[8] See *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

[9] Neb. Rev. Stat. § 29-1919 (Cum. Supp. 2022).

[10] *State v. Case, supra* note 8.

[11] Brief for appellant at 23.

[12] *State v. Case, supra* note 8.

Having determined that *Brady* and § 29-1912 were not violated, we must now consider whether the district court abused its discretion in sustaining the State's motion to continue the trial. We conclude that it did not.

As noted above, Turner relies on *Brady* in challenging the trial court's ruling. Because *Brady* applies to exculpatory evidence, we read his argument to concede that the pertinent evidence was, at least in part, exculpatory. That said, it is difficult to see how the trial court's decision was based upon reasons that are untenable or unreasonable or that its action was clearly against justice or conscience, reason, and evidence.[13]

To the contrary, the court's decision allowed the State to evaluate whether the pertinent evidence was exculpatory and, therefore, needed to be disclosed under *Brady*. Moreover, the continuance gave the State an opportunity to disclose any exculpatory evidence before trial, and it is undisputed that the State did so. Under these circumstances, we conclude that the court did not abuse its discretion in sustaining the State's motion to continue trial.

For completeness, we note that Turner makes an additional argument suggesting a categorical rule should apply based on the timing of a party's request for continuance. Because the circumstances of each case differ and are pertinent, we decline to adopt such a rule. The determination is appropriately within the trial court's discretion.

## 2. Sufficiency of Evidence

Turner's second assignment of error challenges the sufficiency of the evidence to support his first degree murder conviction. In Nebraska, a person commits first degree murder if he or she kills another person purposely and with deliberate and premeditated malice.[14]

---

[13] See *State v. Ezell, supra* note 5.

[14] § 28-303.

### (a) Standard of Review

[6] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[15]

### (b) Discussion

Turner presents several arguments, all of which seem to revolve around Johnson's testimony. For example, Turner asserts that Johnson's testimony was the "only evidence presented" to establish his mental state and that no other evidence supported a finding of premeditation.[16] Then, to the extent that other evidence tended to corroborate Johnson's account of events, Turner proposes other explanations. He next highlights his alibi evidence, the lack of DNA evidence on the firearm, and other possible "suspects."[17] Finally, he argues that Johnson's testimony was "riddled with discrepancies" and that he "lacks credibility."[18]

In sum, Turner contends that Johnson's testimony was the "only evidence linking [him] to the crime" and that Johnson's testimony was inconsistent and not corroborated by other witnesses.[19] We disagree.

[7] As the State points out, a voluntary confession is insufficient, standing alone, to prove that a crime has been

---

[15] *State v. Lorello*, 314 Neb. 385, 991 N.W.2d 11 (2023).

[16] Brief for appellant at 15.

[17] *Id*. at 22.

[18] *Id.* at 20.

[19] *Id.* at 22.

committed, but it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation.[20] Here, the State presented evidence regarding the events leading up to the shooting, Vaughn's cause of death, the scene of the crime, forensics, cell phone records, cell tower metadata, and tangible physical evidence. This evidence corroborated Turner's confession to Johnson.

Turner's remaining arguments are contrary to our standard of review. On appeal, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, because such matters are for the finder of fact.[21] The relevant question here is only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt.[22] After viewing the evidence in the light most favorable to the State, we conclude that the evidence was sufficient to support Turner's conviction.

### 3. Ineffective Assistance of Counsel

[8] Finally, Turner assigns two claims of ineffective assistance of trial counsel. As a preliminary matter, we note that he is represented by different counsel on appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[23]

---

[20] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[21] See *State v. Lorello, supra* note 15.

[22] See *id.*

[23] *State v. Dap, ante* p. 466, 997 N.W.2d 363 (2023).

The State contends that both claims are insufficiently specific and should not be considered.

### (a) Standard of Review

[9,10] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[24] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[25]

[11,12] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[26] When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[27]

### (b) General Principles

[13-15] Before addressing Turner's articulated claims, we set forth general principles that govern ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[28] the defendant must

---

[24] *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

[25] *Id.*

[26] *State v. Lorello, supra* note 15.

[27] *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

[28] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[29] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[30] To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[31]

### (c) Discussion

#### (i) Failure to Zealously Advocate

Turner first claims that his trial counsel was deficient in "failing to zealously advocate for [him]." We agree with the State that this assignment is insufficiently specific.

[16] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[32] We recently rejected a similar assignment in *State v. Miranda*, noting that it "d[id] not specifically allege any deficient conduct by [the defendant's] counsel."[33] Likewise, Turner's assignment lacks the specificity we demand on direct appeal. Therefore, we decline to address it.

#### (ii) Failure to Present Adequate Defense

Turner next claims that his trial counsel was ineffective in failing to "present an adequate defense." According to Turner, he retained only one of the two attorneys who represented him at trial, and he asserts that he did not consent to that

---

[29] *State v. Galindo, ante* p. 1, 994 N.W.2d 562 (2023).

[30] *State v. Dap, supra* note 23.

[31] *Id.*

[32] *State v. Garcia, ante* p. 74, 994 N.W.2d 610 (2023).

[33] *State v. Miranda, supra* note 27, 313 Neb. at 376, 984 N.W.2d at 276.

attorney's associate "doing the majority of trial."[34] However, Turner fails to specify how the associate's performance was deficient. Instead, he broadly contends that his trial counsel was deficient in "delegating the majority of trial responsibilities to another attorney."[35]

We read Turner's argument to suggest that a trial counsel's delegating duties to his or her associate is presumptively deficient conduct by counsel. We disagree. Although we have not previously addressed this precise issue,[36] similar arguments have been rejected by other courts.[37] This claim lacks merit.

## VI. CONCLUSION

We conclude that the district court did not abuse its discretion in sustaining the State's motion to continue trial based on its belated discovery of pertinent evidence. Viewing the evidence in the light most favorable to the prosecution, we further conclude that Turner fails to show that no rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. Turner also fails to sufficiently allege ineffective assistance of trial counsel. We therefore affirm the district court's judgment.

Affirmed.

---

[34] Brief for appellant at 29.

[35] *Id.*

[36] But see, *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013) (rejecting per se determination of ineffective assistance of counsel in other context); *State v. McCroy*, 259 Neb. 709, 613 N.W.2d 1 (2000) (same).

[37] See, e.g., *Young v. State*, 473 S.W.2d 390 (Mo. 1971); *Bass v. State*, 713 S.W.2d 782 (Tex. App. 1986). See, also, *Rocha v. U.S.*, No. 92-2024, 1993 WL 57479 (6th Cir. Mar. 4, 1993) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 986 F.2d 1422 (6th Cir. 1993)); *Lynch v. State*, No. 42299, 2015 WL 6604290 (Idaho App. Oct. 30, 2015).