IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DUARTE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ALEJANDRO R. DUARTE, APPELLANT.

Filed January 14, 2025.    No. A-24-083.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Alejandro R. Duarte appeals from the Douglas County District Court's order that affirmed the county court's convictions of Duarte for third degree domestic assault and third degree assault. On appeal, he contends that the evidence was insufficient to support his convictions, the county court erred in denying his motion for a new trial, the sentences imposed are excessive, and his trial counsel was ineffective in various ways. For the reasons set forth herein, we affirm.

- 1 -

## II. STATEMENT OF FACTS

### 1. BACKGROUND

The charges against Duarte stem from an altercation involving Duarte; Rachel Willis, Duarte's friend since childhood; and Alisha Madej, a mutual friend of Duarte and Willis and a former romantic partner of Duarte. According to Willis and Madej, during an incident which occurred while Duarte was visiting Willis' home, Duarte punched Willis in the face with a closed fist, pushed her down, and then kicked her in the head. Willis suffered a black eye, a broken jaw, and two cracked teeth. During the same incident, Duarte threw Madej down "like a rag doll" causing her to fall into a shoe rack. Madej suffered bruising and soreness. As a result of this incident, Duarte was charged with the third degree domestic assault of Madej and the third degree assault of Willis, both Class I misdemeanors.

### 2. TRIAL

A bench trial was held in November 2022. Witnesses at trial included Willis, Madej, Duarte, and Sarah Allison, a bartender at the bar that Duarte, Willis, and Madej visited earlier on the evening of March 11, 2022. At the start of the trial, the court granted the parties' joint motion to sequester the witnesses stating:

> I'll note the joint motion to sequester any and all witnesses will be granted at this time. So any witnesses that are in this courtroom, except the first one, you'll be ordered not to discuss your testimony with anyone, with the exception of the lawyers. Failure to follow that order could subject you to a contempt sanction.

### (a) Rachel Willis Testimony

Willis testified that, on March 11, 2022, Willis and Duarte were "hanging out" together, but after they had an argument, Willis left to meet Madej at a bar. While at the bar, Willis received repeated calls from Duarte demanding to know her location. After Willis told Duarte her location, Duarte met Willis and Madej at the bar. When the parties left the bar, Madej left on her own while Duarte agreed to drop off Willis at her home. When they arrived at Willis' house, Willis told Duarte "I'm going inside, goodbye" but Duarte refused to leave and followed Willis into her home. Willis testified that she told Duarte to leave and that she "didn't want to be around him anymore."

At some point during Willis' and Duarte's interaction, Willis received a phone call from Madej who then came to Willis' home. Upon Madej's arrival, Duarte started "trying to talk to her" and Madej tried "to get away" by retreating to the bedroom. During the interaction, Duarte continued yelling at Willis, who was sitting down, and when she attempted to stand up three or four times, each time Duarte "pushed her back down" with both hands. Willis then told Duarte, "You're mad at me because I can do for [Madej] what you can't do." Duarte responded by punching Willis in the face with a closed fist. Willis backed up into her bedroom where Madej had retreated but Duarte followed them, ultimately grabbing Madej with both arms and "just chucked her" and pushed Willis down and kicked her in the back of her head two or three times. When Duarte stopped kicking Willis, she saw that Duarte "had [Madej] by one arm" then Madej "headbutted him." Willis' injuries included a black eye, a broken jaw, and two cracked teeth. Willis

stated that she did not report the incident to police for approximately 4 to 5 days because she "was scared, embarrassed, [and] hurt" and "didn't want anyone to see [her]."

### (b) Alisha Madej Testimony

Madej's testimony corroborated Willis' testimony. Specifically, Madej confirmed that when Willis attempted to get up from her seated position three or four times, Duarte would push her back down. Madej confirmed that Duarte punched Willis in the face. At that point, Madej attempted to intervene. She and Willis kept backing up to get away from Duarte and eventually ended up in Willis' bedroom. Duarte used both arms and "threw [Madej] to the ground." Madej described that she "was tossed like a rag doll" and she suffered bruising and soreness. She also witnessed Duarte kick Willis in the head three or four times while Willis was in the fetal position on the floor. Madej intervened by headbutting Duarte in an effort to make him stop attacking Willis. Madej testified that she did not report the assault for approximately a week because she "was traumatized."

### (c) Testimony on Behalf of Defense

Duarte testified on his own behalf and called Sarah Allison, a bartender at the bar frequented by the parties who was tending bar on March 11, 2022, and who recalled seeing both Madej and Willis. Their respective testimony can be summarized as follows:

### *(i) Duarte Testimony*

In his defense, Duarte testified that he could not have committed the offenses as described by Madej and Wills because he had recently undergone surgery on his left shoulder and had to wear an arm sling for 3 to 4 months. He claimed that on March 11 and 12, 2022, he wore the sling all day because he "had no strength to hold it up" and his usage of his left arm was "[v]ery minimal."

Duarte also disputed Willis' and Madej's version of events. According to Duarte, he gave Willis a ride to her home. He testified that once at Willis' house, they went inside to finish a discussion that they had started earlier in that night. Approximately 10 minutes later, Madej arrived and "kept interrupting" him. Duarte stated that he told Madej to "shut up" after which she "became super aggressive, punched me three of four times in the face, headbutted me, and split my nose." Then, Duarte stated Willis told him that "she could do stuff for [Madej] that I couldn't," which he claimed that he "laughed off" but he said that Willis "came at me super aggressively trying to fight me." He stated that he

> put my right arm out to stop her. She came at me a second time, trying to fight me again. I tried pushing her again. She came at me a third time, and I stepped around her really good, she fell to the ground. I told her to stay down on the ground. . . . And she jumped up and just started swinging. . . and I felt I had no other choice but to protect myself and swing back, because I already had a lot of injuries to my shoulder, and I just got assaulted by [Madej].

Duarte testified that, in his estimation, he did not use excessive force but "just used the force that I thought I needed to get her . . . away from me to protect myself." He further testified

that after Madej punched him and headbutted him, Willis came at him with her head down trying to headbutt him and swing at him at the same time and

> that's why I just pushed her. I just . . . put my arm out the first time. She came at me . . . the second time. I did the same thing. The third time she came at me a little harder, so I pushed her harder. She . . . tripped over something, and I just told her not to get up . . . [b]ut she just jumped up and started swinging on me, causing even more bruising on my face. And so, I felt I had no choice but to protect myself and my shoulder, and I swung back.

Duarte claims that he pushed with his right arm because he did not have any strength in his left arm. He also testified that he had hip surgery in approximately October 2022 and that he was physically unable to kick.

### (ii) Sarah Allison Testimony

Allison, the bartender, corroborated Duarte's testimony that he was wearing a sling at the bar on the night of March 11 and early morning hours of March 12, 2022. During Allison's testimony, an exhibit showing video of the bar on the evening in question was admitted into evidence showing that Duarte was wearing a sling on his left arm.

### (iii) Recall of Willis and Madej by Defense

Willis and Madej both contradicted Duarte's testimony that his arm was in a sling on March 11 and 12, 2022. Willis stated that although Duarte was wearing a sling at the bar, that was the only time Duarte wore the sling on those dates. And both Willis and Madej testified that Duarte was not wearing a sling at Willis' home.

Madej admitted that she had picked up Duarte following his shoulder surgery and his arm was in a sling at that time, but she could not remember the exact date of Duarte's surgery. Madej also testified that, contrary to Duarte's testimony, Willis did not strike Duarte.

### (d) Verdict

The county court found Duarte guilty of both charged offenses, specifically noting that the court found the testimony of Willis and Madej to be credible. The court further found that Duarte's defense of self-defense "was unreasonable under these facts and circumstances."

### 3. DUARTE'S MOTION FOR NEW TRIAL

Following the guilty verdicts but prior to sentencing, Duarte filed a motion for a new trial alleging, among other things, that a spectator was using her phone in the courtroom and that Madej and Willis had violated the court's sequestration order. He claimed that the spectator, Madej, and Willis were communicating during the trial in violation of the court's sequestration order. Duarte testified at the hearing and proffered video exhibit testimony. Duarte claimed that Madej and Willis discussed whether Duarte was wearing a sling at the time of the alleged events. He claimed that during Madej and Willis' direct examinations, they testified that he was not wearing a sling. However, after conversing in the hallway after the State had rested its case and being recalled by the defense, Madej and Willis changed their testimony to say that he was not wearing the sling at the time of the alleged assaults. Duarte also offered into evidence video footage of Madej and

Willis interacting with each other prior to being recalled by the defense. The video footage contained no audio.

Following the hearing, the county court denied the motion for new trial, specifically finding:

> The Court has considered the evidence and testimony received in reference to the abovementioned Motion for a New Trial. The Court would have to engage in speculation as to what comments may or may not have been said between [Willis] and [Madej]. The fact that a person was using a cell phone in the Courtroom after repeated warnings to stop its use, does not mean that [the spectator was] communicating with Willis and Madej. [Duarte] has to establish by the evidence that he was prejudiced by an alleged violation of this Court's Sequestration Order (See *State v. Trail*, 312 Neb. 843 (2022)[)]. The Court notes that neither Willis nor Madej were called as witnesses on [Duarte's] Motion nor was there sufficient evidence offered to establish that their conduct ultimately affected the outcome of this case or the Court's decision. The Court finds that [Duarte] has not established sufficient grounds and prejudice to warrant a new trial in this matter.

### 4. SENTENCING

At the sentencing hearing, Duarte was represented by new counsel. The court noted that it had reviewed the presentence investigation report and the letters submitted by defense counsel. The court noted that Duarte is a very high risk candidate for community-based interventions and that anything less than incarceration would depreciate the seriousness of Duarte's crimes and promote disrespect for the law. The court sentenced Duarte to consecutive sentences of 270 days' imprisonment in the Douglas County Department of Corrections. The court granted Duarte credit for 2 days served and ordered him to pay restitution of $4,146.50 to Willis. Duarte timely appealed to the Douglas County District Court and filed a timely statement of errors.

### 5. APPEAL TO DISTRICT COURT

The issues raised in Duarte's statement of errors on appeal to the Douglas County District Court were the sufficiency of the evidence to support his convictions, the county court's denial of his motion for a new trial, that the sentences imposed were excessive, and that his trial counsel was ineffective in "failing to present [Duarte's] evidence at trial; . . . failing to challenge the State's evidence; . . . [and] failing to present [Duarte's] evidence to support the motion for a new trial."

Following a hearing on Duarte's appeal, the district court affirmed the judgment of the county court in all respects. Regarding Duarte's claim of insufficiency of the evidence to support his convictions, the district court noted that Duarte

> argues that the State failed to submit sufficient evidence to rebut [his] claim of self-defense. [Duarte] argues in his brief that the State did not challenge [his] version of events he testified to at trial. However, the State challenged the self-defense claim in their case-in-chief, with evidence in the form of testimony by two witnesses, . . . Willis and . . . Madej. Facts adduced in their testimony show that [Duarte] did not act in self-defense. Both victims testified that [Duarte] went to the victim [Willis'] house, and that he went

voluntarily, it was even his idea. He could have left at any time because he had his vehicle there. . . .

[Duarte] also argues the evidence was insufficient because his self-defense claim was not rebutted by evidence regarding his claimed shoulder injury. [Duarte] testified he had shoulder surgery "recently" on his left shoulder and had to have a follow up procedure on February 8, and testified that on March 12, 2022[,] his shoulder was still in a state that made it impossible for him to extend or raise his left arm. Part of [Duarte's] self-defense theory was that he couldn't have pushed or tossed . . . Madej to the ground due to pain and mobility issues in that shoulder.

Although no one can refute [Duarte's] own account of preexisting injury or pain, [Duarte] admitted he was able to push the victim despite his claimed injury. He says he was using his right arm to push [Willis], and that he tried "pushing her again" before swinging on her. [Duarte] testified that he pushed . . . Willis three times, harder each time, and the third time she tripped and fell and he told her not to get up. This is basically what the [S]tate proved happened: Duarte was shoving [Willis] repeatedly and, after punching her, she fell backward while being pushed or pursued by Duarte, at which point he kicked her in the head. Although [Duarte's] version depicts his action of pushing and swinging in self-defense, he simultaneously rebuts his defense that his shoulder was too injured for him to push or punch anyone.

Ultimately, after weighing all of the evidence and credibility of the witnesses, the Court found that the evidence showed the assaults occurred as the State's witnesses testified, whether or not [Duarte's] shoulder was injured.

Regarding Duarte's claim that the lower court erred in denying his motion for a new trial on the basis that Willis and Madej violated the court's sequestration order, the court stated:

[Duarte] alleged by affidavit, as well as testimony and video exhibit at the hearing on the motion for new trial, that . . . Willis and . . . Madej crossed paths in the courthouse stairway and hall during the trial while under a sequestration order. Exhibit 8 depicts the Douglas County Courthouse main floor, and is date and time stamped for November 8, 2022, during the time the trial was ongoing. [Duarte] offered exhibit 8 to show that . . . Willis and . . . Madej spoke on the stairwell for a few moments. There is no audio. Exhibit 8 also shows these two witnesses speaking to each other at one other point after they had both testified and the State had rested. There is no audio.

After citing to applicable law, the court found that

showing that the State's witnesses spoke to each other is not enough. There is no evidence as to what was said. [Duarte] was able to [cross-examine] these witnesses and these examinations did reveal that they saw him with a sling on at times. [Duarte] must allege specific misconduct by a witness and show that it has substantially affected his rights. [Duarte] has done neither.

Because evidence that the [S]tate's witnesses conversed briefly after their testimonies fails to show that a sequestration order was violated, or how any violation

- 6 -

would have materially affected [Duarte's] trial rights, the court did not abuse its discretion in overruling [Duarte's] motion for [a] new trial.

Regarding Duarte's claims of ineffective assistance of counsel, the court found:

Ultimately, the witnesses trial counsel failed to call at trial would not have provided any useful testimony or even admissible testimony as these witnesses were not at the location when the assaults took place. Thus, failing to call them was not deficient performance. In conclusion, regarding all of [Duarte's] claims that his trial counsel was ineffective, the facts in the record available to this court on appeal are sufficient to determine that [Duarte] was not prejudiced by the performance of his trial counsel.

Duarte has timely appealed to this court and is represented by counsel that represented him during the sentencing hearing and during his appeal to the district court.

## III. ASSIGNMENTS OF ERROR

Duarte contends that the district court erred in affirming his county court convictions and sentences because: (1) the evidence was insufficient to support his convictions; (2) the county court erred in denying his motion for a new trial; (3) the sentences imposed are excessive; and (4) his trial counsel was ineffective in (a) failing "to adduce the medical evidence" during Duarte's trial; (b) failing "to call the impeachment witness"; (c) limiting the offering of exhibit 6, i.e., the video showing him wearing a sling at the bar on March 11, 2022; (d) failing to offer prior physical incidents involving Willis; and (e) failing "to call his two accusers during the hearing on his motion for a new trial." Brief for appellant at 9.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *Id*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court applies a de novo standard when reviewing a trial court's dismissal of a motion for new trial without conducting an evidentiary hearing, but it applies an abuse of discretion standard of review to appeals from motions for new trial denied after an evidentiary hearing. *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Duarte's first assignment of error is that the evidence was insufficient to support his convictions. He argues that he "was physically incapable of doing the things he was accuse[d] of in the manner they were described." Brief for appellant at 16. He also argues that he presented evidence of an affirmative defense, i.e., self-defense, which the State failed to challenge or disprove.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Turner, supra*.

### (a) Third Degree Domestic Assault

Duarte was convicted of the third degree domestic assault of Madej and the third degree assault of Willis. To obtain a conviction of Duarte for committing third degree domestic assault as charged, the State was required to prove, beyond a reasonable doubt, that Duarte intentionally and knowingly caused bodily injury, or threatened bodily injury, to Madej who was his intimate partner. See Neb. Rev. Stat. § 28-323(1)(a) (Reissue 2016) An "intimate partner" includes "persons who are or were involved in a dating relationship." § 28-323(8).

During the trial, Willis testified that Duarte grabbed and threw Madej, who fell into a shoe rack causing it to break. Madej also testified that Duarte "tossed [her] like a rag doll" when throwing her to the ground. Madej also testified that she experienced pain as a result of having been thrown to the ground and hitting Willis' shoe rack. Madej further testified that she and Duarte had previously been involved in a dating relationship. And although Duarte claimed that he could not use his left arm, he admitted that he pushed Madej. The credibility of witnesses is a question for the finder of fact. See *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

We find that the evidence, when viewed in the light most favorable to the State, is sufficient to establish Duarte intentionally and knowingly caused bodily injury to Madej who was his intimate partner. Thus, Duarte's claim that the evidence was insufficient to support his conviction for third degree domestic assault fails.

(b) Third Degree Assault

Duarte was also convicted of the third degree assault of Willis. To convict Duarte of the third degree assault of Willis as charged, the State was required to prove, beyond a reasonable doubt, that he intentionally, knowingly, or recklessly caused bodily injury to Willis or threatened Willis in a menacing manner. See Neb. Rev. Stat. § 28-310 (Reissue 2016).

During the trial, Willis testified that when she tried to stand up from the couch, Duarte repeatedly pushed her back down and that after she told Duarte that "you're mad at me because I can do for [Madej] what you can't do," Duarte responded by punching her in the face. Willis also testified that Duarte pushed her to the ground and kicked her in the head two or three times. As a result of Duarte's actions, Willis suffered injuries including a black eye, a broken jaw, and broken teeth. Madej's testimony corroborated Willis' version of events. And although Duarte claimed that he could not use his left arm, he admitted that he pushed Willis and "swung" at her. The credibility of witnesses is a question for the finder of fact. See *State v. Turner, supra.*

We find that the evidence, when viewed in the light most favorable to the State, established that Duarte committed the third degree assault of Willis by intentionally, knowingly, or recklessly causing bodily injury to Willis. Accordingly, Duarte's claim that the evidence was insufficient to support his conviction for third degree assault fails.

(c) Self-Defense

Duarte also contended that he adduced evidence that he acted in self-defense and the State failed to disprove that evidence.

In *State v. Adams*, 33 Neb. App. 212, 220-21, 12 N.W.3d 114, 122-23 (2024), this court recently stated:

> Self-defense is a statutorily affirmative defense in Nebraska. See *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009) (defendant has burden of going forward with evidence of self-defense, after which State has burden to prove defendant did not act in self-defense). . . . To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. [*State v. Bedford*, 31 Neb. App. 339, 980 N.W.2d 451 (2022)]. The force used in defense must be justified under the circumstances. *Id.* A trial court is not required to give an instruction where there is insufficient evidence to prove the facts claimed; however, it is not the province of the trial court to decide factual issues even when it considers the evidence produced in support of one party's claim to be weak or doubtful. *Id.*

Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides in part that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." However, the statute also provides that the use of deadly force

shall not be justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating . . ." § 28-1409(4)(b).

Duarte essentially argues that the court erred in its role of factfinder by determining that he did not act in self-defense. To the extent that Duarte argues that his actions were justified by self-defense, he asks us to make credibility determinations, reweigh the evidence, and reach our own conclusion. But that was the role of the factfinder, in this case the trial court. An appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). The county court, as the finder of fact, explicitly found that Madej and Willis were credible and that Duarte's claim of self-defense "was unreasonable under these facts and circumstances" and it is not this court's role to resolve conflicts in evidence, pass on the credibility of witnesses or reweigh the evidence. Accordingly, we find that Duarte's claim regarding self-defense fails.

2. DENIAL OF MOTION FOR NEW TRIAL

Second, Duarte contends that the district court erred in affirming the county court's denial of his motion for a new trial. In the district court Duarte alleged by affidavit, as well as testimony and video exhibit, that Willis and Madej crossed paths in the courthouse stairway and hall during the trial while under a sequestration order.

A new trial may be granted where there is an "[i]rregularity in the proceedings of the court, of the prosecuting attorney, or of the witnesses for the state or in any order of the court or abuse of discretion by which the defendant was prevented from having a fair trial . . ." See Neb. Rev. Stat. § 29-2101(1) (Reissue 2016). In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

Duarte's motion for a new trial was based upon his claim that "Willis and Madej had communication in violation of the sequestration order which allowed them to align their stories prior to testifying for the second time as to Duarte wearing a sling." Brief for appellant at 22. The Nebraska Supreme Court in *State v. Hess*, 225 Neb. 91, 92-93, 402 N.W.2d 866, 867 (1987), addressed sequestration orders stating:

> Generally speaking, a request for sequestration of witnesses is a request that they be excluded from the courtroom until called to testify. *Swartz v. State,* 121 Neb. 696, 238 N.W. 312 (1931); *Maynard v. State,* 81 Neb. 301, 116 N.W. 53 (1908). A sequestration order alone does not automatically put the witnesses on notice that they are not to discuss their testimony with other witnesses. *People v. Davis,* 133 Mich. App. 707, 350 N.W.2d 796 (1984). If a party desires to extend a sequestration order to prohibit discussion of proposed testimony between or among the various witnesses, such a request must specifically be made. *People v Davis, supra.* Cf. *State v. Bautista,* 193 Neb. 476, 227 N.W.2d 835 (1975).

Further, the *Hess* court stated that a showing of prejudice is necessary to constitute reversible error due to the violation of a sequestration order. Duarte has made no such showing of prejudice.

Here, in its sequestration order, the district court ordered the witnesses not to discuss their testimony with anyone except the lawyers. And even though Duarte offered video of Madej and

Willis conversing during the period of time that Duarte's trial was taking place, Duarte has not made any showing of the nature of the conversation between Madej and Willis. The video adduced into evidence has no audio and there was no other evidence of the nature of Madej and Willis' conversation. Because Duarte failed to show that he was prejudiced, the district court properly affirmed the county court's overruling of Duarte's motion for a new trial.

We also note that Duarte argues that a courtroom spectator who was admonished for being on her phone was communicating with Madej and/or Willis. However, the fact that a courtroom spectator was using a phone in the courtroom despite admonitions to the contrary does not mean that the spectator was contacting Madej and/or Willis. There simply is no evidence supporting Duarte's claim, and the misconduct of a spectator during a trial, which misconduct is immediately suppressed and rebuked by the court, and where no prejudice has been shown, does not constitute grounds for a new trial. See, *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990); *Wever v. State,* 121 Neb. 816, 238 N.W. 736 (1931); *Lindsay v. State,* 46 Neb. 177, 64 N.W. 716 (1895). This assigned error fails.

### 3. EXCESSIVE SENTENCES

Duarte's third assignment of error is that the sentences imposed are excessive. He contends that the sentences were imposed "despite the mitigating evidence presented as to his physical limitations, the self-inflicted injury, payment of full restitution and [the] overall nature of what happened and background of the situation." Brief for appellant at 17.

Duarte was convicted of third degree domestic assault and third degree assault, both Class I misdemeanors. See, Neb. Rev. Stat. § 28-323 (Reissue 2016) (domestic assault); Neb. Rev. Stat. § 28-310 (Reissue 2016) (third degree assault). His sentences of 270 days' imprisonment for each conviction are within the statutory sentencing range for Class I misdemeanors which are punishable by no minimum and a maximum of 1 year of imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016) (misdemeanors; classification of penalties).

It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id*.

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The presentence investigation report indicates that Duarte is 41 years old, single, with one dependent. He obtained a GED and a bachelor's degree in project management. His criminal convictions include three convictions for driving under the influence, two convictions for obstructing an officer, and single convictions for refusing a request to leave, misdemeanor assault

causing bodily injury, disorderly conduct, disturbing the peace, driving under suspension, criminal mischief, domestic assault, as well as convictions for other minor charges and traffic offenses. The level of service/case management inventory assessed Duarte as a very high risk to reoffend and the domestic violence offender matrix assessed Duarte as a high risk to reoffend based upon behavior that was stalking in nature, injuries to the victims which required medical attention, clear patterns of abuse with the current victims and with past victims, and a history of multiple domestic violence related contacts with police.

The probation officer noted in the PSR that "numerous" protection orders had been filed against Duarte "reporting the exact same behaviors towards women he has been in relationships with." Additionally, Duarte "did not take any responsibility for his actions" and continued to claim that "the victims assaulted him, perjured themselves in Court and the Court system has it out for him." Duarte also reported that probation "would interfere with his life."

Based upon factors including that the sentences imposed were within the relevant statutory sentencing range, Duarte's criminal history, his failure to accept responsibility and blaming the victims for the offenses, the violence of the offenses and harm caused to the victims, his high risk to reoffend, the county court did not abuse its discretion in sentencing Duarte and the district court did not err in affirming Duarte's sentences.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Duarte's final assignment of error is that his trial counsel was ineffective in: (a) failing to adduce medical evidence during Duarte's trial; (b) failing "to call the impeachment witness": (c) limiting the offering of exhibit 6; (d) failing to offer prior physical incidents involving Willis; and (e) failing to call his two accusers during the hearing on his motion for a new trial.

As a preliminary matter, we note that Duante is represented by different counsel on appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

Before we address Duarte's claims of ineffective assistance of trial counsel, we first consider which of his allegations of ineffective assistance of counsel were properly preserved for consideration by this court. The general rule is that when the district court acts as an appellate court, only those issues properly presented to and passed upon by the district court may be presented to a higher appellate court. *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023). In such circumstances, absent plain error, an issue raised for the first time in the Supreme Court or the Court of Appeals will be disregarded inasmuch as the district court cannot commit error in resolving an issue never presented and submitted for disposition. *Id*.

In his statement of errors to the district court, Duarte alleged three claims of ineffective assistance of trial counsel:

4. Ineffective assistance of trial counsel in failing to present [Duarte's] evidence at trial;

5. Ineffective assistance of trial counsel in failing to challenge the State's evidence;

6. Ineffective assistance of trial counsel in failing to present [Duarte's] evidence to support the motion for a new trial.

In contrast, in his direct appeal to this court, Duarte has identified five allegations of ineffective assistance of trial counsel:

IV. Duarte received ineffective assistance of counsel when his counsel failed to adduce the medical evidence at his trial;

V. . . . Duarte received ineffective assistance of counsel when his counsel failed to call the impeachment witness.

VI. Duarte received ineffective assistance of counsel when his counsel limited the offering of exhibit 6.

VII. Duarte received ineffective assistance of counsel when his counsel failed to offer prior physical incidents involving Willis.

VIII. Duarte received ineffective assistance of counsel when his counsel failed to call his two accusers during the hearing for a new trial.

Brief for appellant at 9.

In reviewing his claims of ineffective assistance of counsel raised before the district court, Duarte failed to raise claims VI and VII, i.e., his claims that he received ineffective assistance of counsel when his counsel limited the offering of exhibit 6 and that he received ineffective assistance of counsel when his counsel failed to offer prior physical incidents involving Willis. Because these claims were not raised before the district court, they have not been properly preserved for consideration by this court.

Assuming, without deciding, that Duarte's assignment of error VIII (ineffective assistance because trial counsel failed to call his two accusers during hearing on motion for new trial) corresponds to allegation 6 in his statement of errors to the district court (ineffective assistance because trial counsel failed to present Duarte's evidence to support motion for a new trial), these allegations are vague and lacking in specificity. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Because Duarte failed to sufficiently assign and argue this allegation of deficient performance by trial counsel, this allegation is not preserved.

Finally, regarding Duarte's remaining two assignments of error alleging the ineffective assistance of counsel, i.e., that Duarte received ineffective assistance of counsel when his counsel failed to adduce sufficient medical evidence at his trial (IV) and that Duarte received ineffective assistance of counsel when his counsel failed to call the impeachment witness (V), assuming without deciding that these claims tracked allegations 4 and 5, which were presented to the district court claiming that trial counsel was ineffective in failing to present Duarte's evidence at trial and in failing to challenge the State's evidence, these allegations do not meet the specificity requirement of *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The Nebraska Supreme Court has made it abundantly clear since its decision in *Mrza* that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. See *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024) (citing numerous instances of adherence to this principle). See, also, *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (ineffective assistance

of counsel claim not considered when assigned error did not specify counsel's deficient performance, even though argument section of brief discussed claims in detail).

Duarte's allegations of ineffective assistance of counsel raised to the district court allege that counsel was deficient "in failing to present [Duarte's] evidence at trial" and "in failing to challenge the State's evidence." These claims are lacking in specificity as they fail to specify what evidence was not properly presented at trial or how specifically defense counsel failed to challenge the State's evidence. Where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal in the absence of plain error. See *State v. Anderson*, 14 Neb. App. 253, 706 N.W.2d 564 (2005). We will not address these assigned errors, and these assigned errors are not preserved for postconviction review. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) (claim insufficiently stated is no different than claim not stated at all, and insufficiently stated assignment of error and accompanying argument will not prevent procedural bar accompanying failure to raise all known or apparent claims of ineffective assistance of trial counsel).

## VI. CONCLUSION

Having considered and rejected Duarte's assignments of error, we affirm his convictions and sentences.

AFFIRMED.